JAMES LONG, Guardian of Willimoth Stubblefield *v.* THOS. R. READ *el al.*

RENTS. *Charges. Wills.* Where the testator directs that a child should receive a provision from the rents of a tract of land, thereby making the support of the child a charge upon the land, rents accruing subsequent to the child's death are liable for debts contracted previously by her guardian for her support.

FROM HAWKINS.

Appeal from the Chancery Court at Rogersville. H. C. SMITH, Ch.

W. L. DICKSON for complainant.

SHIELDS & SHIELDS for defendants.

FREEMAN, J., delivered the opinion of the court.

Thomas Stubblefield, the father of Willimoth, died in Hawkins county in the year 1833. She was an afflicted idiot child, and by his will he made the following provision for her support: " After providing that persons to be appointed by the county court of Hawkins county, should lay off in one platt sufficient land for an ample support of his wife, and to enable her to raise his family of children, the same to be held by her during life or widowhood," he adds, "provided, nevertheless, my will is, out of *proceeds* of the

land so laid off, there shall be an ample provision made for the maintainance of my daughter Willimoth (who is in a helpless condition), during her natural life—as well as to maintain my wife Patsy." The remainder of his land he directed to be divided among all his children.

The mother's lands were laid off as directed, and she lived on them till her death in 1870. After her death, Long was appointed guardian of complainant. In the meantime, respondent Read had become owner by purchase of the remainder interest in the land, except that of Willimoth.

In 1871 this bill was filed, charging, among other things, that Read was seeking, since the death of the mother, to · obtain possession of the land devised to her, and that there was a growing crop on the land, which the administrator was about to appropriate, disregarding the right of Willimoth to maintainance out of the proceeds of the lands, and further asserting a claim by her to be supported during the remainder of her life out of the tract of land assigned to her mother, and to her interest of one-eleventh of the remainder interest, which she had not disposed of.

Respondent Read answered this bill, in which he maintains that no legal or equitable estate in the dower tract, as it is called, passed to the daughter by the will, her claim amounting, as he says, to only a debt charged upon it, and, therefore, he insists on his right to own the land, subject to this charge, and he be bound to see to the support and maintanance of the daughter, by appropriating enough of the rents and

profits of the land to this purpose. He denies that on a proper construction of the will, complainant has any interest in the remainder.

A receiver, Hugh G. Williams, was appointed to take charge of and rent out the property, soon after the bill was filed, and he ordered to hold the property or its proceeds, subject to the order of the court.

In this state of the case, the matters in dispute were referred to James T. Shields and R. M. Barton, to be by them adjudged as arbitrators. They reported that the daughter was entitled to an interest in the remainder of the testator's lands, and to an ample support during her natural life, from the lands devised to the mother—after first exhausting for that purpose her income from other sources, and directed an inquiry be made as to such income, and what would be a proper allowance for her support from both these sources. They further directed that the land devised to the mother be rented out annually to the highest bidder, and the rents appropriated to her support, so far as necessary after using her other income. They in addition ordered an account of rents since the death of the mother.

This award was confirmed by decree of the court, without objection on the part of any one.

In April, 1875, the master made his report in pursuance of the order of reference made under the decree confirming the award. He reported that $400 per annum was the proper allowance for support of complainant. He also reported the amount of rent since the death of the mother, up to that date, and that

the lands were then rented for the year 1875.   The report was confirmed at May term, 1875, and the fund ordered to be paid out to particular charges specified in the decree.

The case proceeded, the fund being administered under the direction of the court, until November, 1877, when the accounts of the receiver was finally passed upon, and a decree made in favor of Long, the guardian, for $222.07, to be paid out of the fund, and the balance to be paid over to Read, after costs had been paid.

It appears, however, in the proof, that Willimoth had died January 19th, 1875. ¦ So that the rent for the balance of the year 1875 and for 1876, amounting to upwards of $900, were rents accruing after the death of the party entitled to be maintained during her natural life, both by the will and by the award and decree based thereon.   Read has filed the record for error, and assigns for objection, that the decree appropriating these rents, accruing after the death of complainant Willimoth, is not authorized, and this decree should be reversed.

The question is, whether maintainance, or debts due for such maintainance, if not paid before the death of the party entitled to be maintained out of the proceeds of property, are or are not entitled to be held a charge on the proceeds of the property after the death of the party who is entitled to be maintained?

It is argued this is like the debt of a dowress, which cannot be enforced against her dower after her death, the estate ceasing on her death.   But is this

such a case? The respondent, in his answer, insists that the true construction of the will is, that the daughter had no estate in the lands, but only a charge for maintenance on the proceeds—and in this he is correct. The analogy then fails between this and the case of the dowress, who has a life estate in the land, terminating absolutely by her death.

As said by Judge Cooper, in the case of *Anderson* v. *Hammond*, 2 Lea, 287: "The question in all this class of cases is one of intent on the part of the testator." That intent is to be arrived at from the language used, and the nature of the thing to be done, the motives that prompted the gift, in connection with the circumstances of the case. We take it, that the question is to be tested by the fact, whether it is an estate given in the land, or whether the maintainance is to be a charge on the land, or its products. If the latter, then as the maintainance accrued, it so attached, and the death of the party would not discharge the right thus attached. It would only prevent any accumulation of indebtedness for the future.

That maintainance was a charge on the product of the estate is conceded by the respondent; but his theory involves the proposition, that if the party entitled to such maintainance dies before actual appropriation to this purpose, the debt is discharged—and so far as this source of payment is concerned, is gone. In the nature of the thing, this was not the intention of the testator. It being a charge on the produce of land, it must necessarily be received at the end of, or during the year, as produced. The daughter must be

maintained at all times, and so debts would of necessity, in all probability, be incurred, or the right of maintainance accrue.   We cannot suppose that these debts were not intended to be paid, in the event the child died before the product of the land could be realized. This would have left her support upon a most precarious basis, as no one could supply immediate wants, except by taking the risk of loss in the event of her death before the crop could be gathered and marketed during the life of the mother, or the rents collected after her death.   This contingency of death would hang over every year's support during her life, as no one could make any calculation as to when that event would take place, though in fact the debt for maintainance might be discharged every year, except for the period immediately preceding the death of the party. The testator did not intend there should be any impediment, or contingency hanging over the provision he had made, that would in the slightest degree interfere with the assured comfort of his afflicted child.

The result is, we hold the charge was one that properly attached to the product of the lands, before the death of the party, and having so attached, was rightfully discharged out of the rents after her death. This conclusion is made clear by the ruling of this court in the case of *Anderson* v. *Hammond*, 2 Lea, 286, and cases cited, that the devisee of property charged is usually personaly lliable for the payment of the charge. Suppose in this case the heir had gone into possession and received the product of the land, it is clear he would have been personally chargeable, as with a debt.

This debt once legally contracted, could only be discharged by payment. If this be so, the principle is the same in this case, where the land is in custody of the court for the purpose of enforcing the charge, and the rents appropriated are thus received and paid out: See cases cited by Judge Cooper, 2 Lea, 286.

We need not look into the question of the reasonableness of the amount allowed for her maintainance, as that question is not in condition to be reviewed by us in this record. The reports were made by the clerk and master, and confirmed by the court, without objection on the part of the respondent, he having the right to except, as he was entitled to the surplus, after maintaining her. No exception having been taken, it must be assumed he acquiesced in the correctness of what had been reported by the master.

We do not think there is reversible error in the failure to revive in the name of the administrator of Willimoth, after her death. The real contest, then, was between Read and the party who claimed to have the fund appropriated to pay for her support. If this right is conceded, then it would be a useless form to have the administrator a party, when the fund would be directly appropriated to the other claimant in its proper administration by the court.

The result is, the decree of the chancellor must be affirmed with costs.